ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
 I. INTRODUCTION
This matter is before the court on the motion of Defendant Dayville School District 16J (the school district) for summary judgment. Plaintiff Grant County Assessor (the county) appeals from a decision of the Magistrate Division. The county contends that a house and underlying lot owned by the school district and periodically leased to teachers employed by the school district is subject to assessment and taxation under Oregon's ad valorem property tax.
Proceedings in this case have been divided into two phases. The parties first filed cross-motions for partial summary judgment limited to the question of whether, if a tax lien resulting from the school district leasing the house to teachers arose, it would attach to the house and underlying lot. In an order dated April 21, 2010, the court held that such a lien, if it existed, would attach to the house and the lot. See Grant CountyAssessor v. Dayville School District16J, ___ OTR ___ (Apr 21, 2010). The school district now moves for summary judgment on the *Page 2 
grounds that the house is leased to employees of the school district as an incident of their employment, and is thus exempt from assessment and taxation under ORS 307.110.[1]
 II. FACTS
The school district owns a single-family residence located at 280 Schoolhouse Road in Dayville (the house). The house is adjacent to the campus of Dayville Public School. (Aff of Debra Gillespie at 1.) The school district periodically leases the house to employees of the school district. (Id.) When the house is not being used by an employee of the school district, it is allowed to sit empty. (Id. at 2.)
From August 2007 through June 2009, the school district leased the house to Peter and Rebecca Bogardus. Peter Bogardus was hired ten days before the start of the 2007 school year to teach high school-level mathematics at Dayville Public School.[2]
(Id. at 1.) The couple tried to find suitable housing on the private market in Dayville, but were unable to do so. Peter Bogardus states that he would not have been willing to take the job if housing had not been available in Dayville and considers the availability of the house "a deciding factor" in his acceptance of the job offer he received from the school district. (Aff of Peter Bogardus at 1.) The lease agreement between the school district and the Bogardus family designates the school district as the landlord. (Aff of Debra Gillespie, Ex 1.)
Debra Gillespie, the superintendent of the school district, signed the lease agreement on behalf of the school district. *Page 3 
From August 2009 until at least May 2010, the school district leased the house to Stephanie Reed.[3] (Aff of Debra Gillespie, Ex 2; Aff of Stephanie Reed at 2.) Reed was hired during the summer of 2009 to teach fifth and sixth grade at Dayville Public School. (Aff of Debra Gillespie at 2.) Like the Bogardus family, Reed was unable to find suitable housing on the private market in Dayville, and was unwilling to commute to Dayville from John Day or Mount Vernon. (Aff of Stephanie Reed at 1.) Reed's lease agreement likewise designates the school district as landlord and is signed by Debra Gillespie as superintendent. (Aff of Debra Gillespie, Ex 2.)
In a letter dated June 27, 2008, Lane Burton (the Grant County Assessor) wrote Debra Gillespie to notify her that he was cancelling the tax exempt status of the house for the 2008-09 tax year. (Aff of Debra Gillespie, Ex 3.) The school district appealed to the Magistrate Division and prevailed.See Grant County Assessor v. Dayville Public School District16J, TC-MD No 080851C (Mar 31, 2009). The county then appealed to the Regular Division.
James G. Driscoll of Portland represented the school district in proceedings before both divisions of the court. Debra Gillespie was also designated as a representative of the school district during proceedings in the Magistrate Division. The county was represented in both phases of the proceedings by Michael Kilpatrick of Mount Vernon.
The Grant County Assessor assessed taxes on the house for the 2008-09 and 2009-10 tax years. The school district paid these taxes under protest and seeks refunds. (Def's Mot for Summ J at 4.) *Page 4 
 III. ISSUES
1. Are statements made by Debra Gillespie during proceedings in the Magistrate Division admissible as evidence in proceedings in the Regular Division?
2. Is the house subject to Oregon's ad valorem property tax?
 IV. ANALYSIS
A. The Statements Made by Debra Gillespie during Proceedings inthe Magistrate Division.
The school district argues that the court must disregard substantial portions of the opposition brief filed by the county. (Def's Reply Brief at 3.) Specifically, the school district objects to portions of the Memorandum in Opposition of the county in which counsel for the county discusses statements made by Debra Gillespie during proceedings in the Magistrate Division to the effect that (1) the school district did not require any additional responsibilities from teachers living in the house; and (2) teachers working for the school district were not required to live in the house. (Id. at 5.)
The school district argues that because proceedings in the Regular Division are de novo, statements made during proceedings in the Magistrate Division are irrelevant. (Id. at 3.) This argument is not well taken. The school district is correct in that proceedings in the Regular Division are "original, independent proceedings * * * tried without a jury and de novo." ORS 305.425(1). However, the requirement that proceedings in the Regular Division be "original," "independent," and "de novo" does not make statements made in the Magistrate Division per se irrelevant. See NorpacFoods, Inc. v. Dept. of Rev., 15 OTR 331 (2001).[4] *Page 5 
Rather, ORS 305.425(1) requires the Regular Division to "consider all properly admitted evidence and reach its own independent conclusions" in any given case. Reed v. Dept. of Rev.,310 Or 260, 265, 798 P2d 235 (1990). The Regular Division fulfills this duty by allowing the litigants to start over with a clean slate in terms of arguments made and evidence presented.
The county has offered the affidavit of Lane Burton as to the substantive content of Debra Gillespie's statements. The court must therefore determine whether Gillespie's statements, as recounted in Lane Burton's affidavit, are admissible in evidence. To be admissible, evidence must be (1) relevant, and (2) not barred from admission by a provision of the Oregon Evidence Code or other governing law. ORS 40.155. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." ORS 40.150. Gillespie's statements are relevant in this case because the primary point of contention between the parties is whether the circumstances under which the school district leased the house to the Bogardus family and Stephanie Reed qualify for exemption under ORS 307.110(1). Gillespie's statements go to the nature of those circumstances.
Nonetheless, relevant evidence may still be barred by a provision of governing law. The school district argues that the inclusion of the statement in the Memorandum in Opposition of the county constitutes hearsay for which the county has not proffered an exception to the bar on hearsay evidence. (Def's Reply Brief at 3.) The court again disagrees. A statement is specifically not hearsay if the statement is offered against a party and that statement is, among other things, "[t]hat party's own statement, in either an individual or representative capacity." ORS 40.450(4)(b)(A). Debra Gillespie is the superintendent of the school district and she is *Page 6 
alleged to have made the statement while participating on behalf of the school district in a pretrial conference. (Aff of Lane Burton at 2.) The court is satisfied that Gillespie was speaking as a representative of the school district and that Lane Burton's recounting of her statements is specifically "not hearsay" under ORS 40.450(4)(b)(A).[5]
Finally, the school district contends that the court must disregard the county's Memorandum in Opposition because it relies on Michael Kilpatrick's personal recollection of the content and phrasing of Debra Gillespie's statements without an accompanying affidavit or declaration of Kilpatrick attesting to those facts. To the extent that the Memorandum in Opposition is unsupported by affidavits or declarations in the record, the court agrees. The motion of the school district for summary judgment was supported by affidavits and supporting documents, as permitted under Tax Court Rule (TCR) 47 D. Therefore, the county may not rely on the "mere allegations or denials" contained in its Memorandum in Opposition to defeat the motion of the school district. TCR 47 D. Nevertheless, the Memorandum in Opposition appears to rely solely on Michael Kilpatrick's personal recollection only as to the precise phrasing of Debra Gillespie's statements. The assertion of the county as to the substance of Gillespie's statements is supported by the Affidavit of Lane Burton, which is properly in the record. (See Aff of Lane Burton at 2.)
Therefore the substance, but not the precise phrasing, of Gillespie's statements that the school district did not require any additional responsibilities of teachers living in the house and that teachers working for the school district are not required to lease the house, is admitted in evidence. *Page 7 
However, as will be discussed below, the statement is not dispositive as to the motion of the school district for summary judgment.
B. Whether the House is Exempt from Assessment and Taxationunder ORS 307.110.
The text of ORS 307.110 reads, in relevant part:
 "(1) Except as provided in ORS 307.120, all real and personal property of this state or any institution or department thereof or of any county or city, town or other municipal corporation or political subdivision of this state, held under a lease or other interest or estate less than a fee simple, by any person whose real property, if any, is taxable, except employees of the state, municipality or political subdivision as an incident to such employment, shall be subject to assessment and taxation for the assessed or specially assessed value thereof uniformly with real property of nonexempt ownerships."
(Emphasis added). The dispositive issue in this case is: when is a lease to an employee of a political subdivision "an incident to such employment." The court has addressed this issue before. In Port ofBandon v. Department of Revenue the court held that a lease is "incident to" employment if it is "an accompanying minor occurrence or condition" of such employment. 12 OTR 40, 42 (1991). The court inPort of Bandon arrived at this definition of "incident" by reference to Webster's Third New International Dictionary.Id. As did the court in Port of Bandon, this court will focus its inquiry on whether leasing — or at least living in — the house was a condition of the teachers' employment. SeeId. at 42-43.
Much like the word "incident," "condition" is subject to multiple definitions depending upon context. SeeWebster's at 473, Black's Law Dictionary
288 (7th ed. 1999). However, in relation to ORS 307.110 only two appear to be potentially applicable: condition as "[s]omething that exists as an occasion of something else;" and condition as "[s]omething established or agreed upon as a requisite to the doing or taking effect of something else." Webster's at 473. *Page 8 
On the record before the court, the lease of the house to teachers employed by the school district unquestionably meets the "[s]omething that exists as an occasion of something else" definition of condition.[6] In her affidavit in support of the school district's motion for summary judgment, Gillespie states that the house is "rented only to school employees." (Aff of Debra Gillespie at 1.) Nothing in the record before the court contradicts this. In addition, the rental agreement between the school district and the Bogardus family and the rental agreement between the school district and Stephanie Reed both state that the rental agreement is contingent on employment by the school district, and that the right to occupy the house terminates 30 days after the receipt of written notice that such employment will cease. (Aff of Debra Gillespie, Exs 1, 2.) Finally, nothing in the record indicates that either the Bogardus family or Stephanie Reed would have sought to lease the house independent of an offer of employment from the school district. In short, the Bogardus family and Reed leased — and were only able to lease — the house "as an occasion of" Peter Bogardus' and Stephanie Reed's employment with the school district.
The lease of the house also meets the "[s]omething established or agreed upon as a requisite to the doing or taking effect of something else" definition of condition. In his affidavit, Peter Bogardus states that due to the lack of suitable rental housing in the Dayville area, he would not have been able to accept his position with the school district if the school district had not rented the house to him. (Aff of Peter Bogardus at 1.) Reed likewise states in her affidavit that (1) she was unable to find suitable housing in Dayville; (2) she was unwilling to commute to Dayville from John Day or Mt. Vernon; and (3) "[t]he Dayville School District's rental house was the determining factor" *Page 9 
when she accepted employment with the school district. (Aff of Stephanie Reed at 1.) Again, there is no evidence in the record to contradict any of these statements.
While there is no direct evidence that either teacher explicitly made acceptance of employment with the school district contingent on the school district agreeing to lease the house, it is clear that but for the school district offering to lease the house, neither teacher would have accepted employment with the school district. In short, both Bogardus and Reed regarded the school district agreeing to lease the house as "requisite to" employment with the school district.
The county argues that the house is not exempt because living in the house does not appear to be associated with any duties within the scope of the teacher-occupants' employment. Phrased differently, the county appears to argue that living in the house is not a condition of employment as contemplated by ORS 307.110(1) because the job duties performed by the teachers who live in the house do not differ significantly from the job duties performed by teachers who do not live in the house. The court does not agree that this is the standard ORS 307.110(1) calls for.[7]
It is true that the court in Port of Bandon inquired into whether living in the housing at issue in that case was a condition of employment relating to the employees' duties and concluded that the housing at issue was occupied as an incident to employment only "[a]fter considering all of the activities [of the employees] as Port employees." 12 OTR at 42-43. Nowhere, however, does thePort of Bandon court state that additional responsibilities were required of the employees in that case as a result of their living on the premises of the port.[8] While it is possible, *Page 10 
and indeed likely, that living on the premises facilitated the employees carrying out their duties, there is nothing in Port ofBandon to suggest that the same duties would not have been required of the employees had they chosen to live in private housing. The most that can be said is that under the circumstances presented in that case, the Port of Bandon court was satisfied that the housing at issue in Port of Bandon was occupied by the employees "as an incident to their employment."
In this case, the leases at issue arose from the school district's job offers to Peter Bogardus and Stephanie Reed. The school district leases the house only to employees of the school district and the right of any employee of the school district to occupy the house appears to be conditioned on continued employment by the school district. In addition, on the record before the court the teachers to whom the house was leased during the tax years at issue at least implicitly conditioned their acceptance of employment by the school district on their ability to rent the house. The court finds that during the 2008-09 and 2009-10 tax years, the house was leased to employees of the school district "as an incident" to their employment, and was thus exempt from ad valorem property tax.[9] *Page 11 
 V. CONCLUSION
Now, therefore,
IT IS ORDERED that Defendant's motion for summary judgment is granted.
Dated this ___ day of January, 2011.
THIS DOCUMENT WAS SIGNED BY JUDGE HENRY C. BREITHAUPTON JANUARY 31, 2011, AND FILED THE SAME DAY. THIS IS A PUBLISHEDDOCUMENT.
[1] All references to the Oregon Revised Statutes (ORS) are to the 2007 edition.
[2] Rebecca Bogardus is also employed by the school district as a music teacher. However, on the record before the court it appears that she began working for the school district some time after the Bogardus family took up residence in the house.
[3] The use of the present tense in Stephanie Reed's affidavit indicates that she was the current occupant of the house at the time of signing. The court has not been made aware of any changes in occupancy between the date of the affidavit and the time of writing.
[4] In Norpac the court considered affidavits of counsel for the taxpayer, counsel for the Department of Revenue and the trial court administrator in the course of de novo proceedings following an order of dismissal from the Magistrate Division. 15 OTR at 333-34. In Norpac the Regular Division reviewed the propriety of procedures in the Magistrate Division, whereas here the county seeks to admit Debra Gillespie's statements as evidence on a substantive issue. Nevertheless, nothing in the statutes governing the Tax Court, the Rules of the Tax Court, or the Oregon Evidence Code requires the Regular Division to disregard the testimony of a competent witness merely because the testimony concerns proceedings in the Magistrate Division.
[5] Alternatively, Gillespie's statements are almost certainly "not hearsay" under ORS 40.450(4)(b)(D) ("A statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.").
[6] Something is "the occasion of" something else if the former causes, gives rise to, or brings about the latter.Webster's at 1560.2.
[7] Moreover, the school district asserts that teachers living in the house do perform additional tasks like watching school property, chaperoning student use of school facilities outside of school hours, and helping students with projects outside of school hours. (Def's Mot for Summ J at 3.) The county argues that the teachers perform these tasks voluntarily and that they do not amount to additional job duties. (Ptf's Mem in Opp at 2.)
[8] The court in Port of Bandon does tell us that the auditor of the port believed that the arrangement between the port and the employees complied with section 119 of the Internal Revenue Code (IRC). 12 OTR at 43. This court does not consider the Port ofBandon court's mention of the auditor's opinion as indicating that the employees in Port of Bandon were required to take on additional duties as a condition of living on the premises of the port. IRC section 119 says nothing about requiring additional duties of employees living in employer-provided housing. Moreover, even if IRC section 119 did impose such a requirement, the Port ofBandon court did not express an opinion as to whether the auditor was correct.
[9] Lane Burton's letter to Debra Gillespie of June 27, 2008, cites the fact that the school district leased the house for "market rent" as a reason for revoking the tax exempt status of the house. (Aff of Debra Gillespie, Ex 3.) This appears to be a reference to ORS 307.166. ORS 307.166(1) provides that real property owned by an "institution, organization, or public body [that is] granted exemption" from property tax remains exempt when leased to another exempt "institution, organization or public body" if, among other things, "the rent payable under the lease * * * has been established to reflect the savings below market rent resulting from the exemption from taxation." At oral argument on this motion the parties agreed that ORS 307.110(1) is the only statute at issue in this case. This court concurs. If for no other reason, ORS 307.166 is not applicable because none of the lessees involved in this case is an "institution, organization, or public body." *Page 1